IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANTHONY E. BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>TECHLAW, INC.,<br><br>Defendant. | CV 18-84-M-DLC-KLD<br><br>FINDINGS & RECOMMENDATION |

This age discrimination in employment case comes before the Court on Defendant Techlaw, Inc.'s Motion for Summary Judgment (Doc. 33) and Motion to Strike the Amended Complaint. (Doc. 43). For the reasons discussed below, both motions are properly granted.

I.   **Background**

Techlaw provides environmental consulting services to various commercial entities and governmental agencies. (Doc. 34, ¶ 2). Prior to his discharge in January 2017, Plaintiff Anthony Brown worked full-time as an environmental associate at Techlaw's facility in Troy, Montana. (Doc. 34, ¶ 3). During 2016,

1

Brown's duties included serving as the Troy facility's on-site supervisor and health and safety coordinator. (Doc. 34, ¶ 16).

The Environmental Protection Agency ("EPA") contracted with Techlaw to conduct sample testing relating to the EPA's risk assessment investigation and sampling concerning asbestos in and around in Libby, Montana. (Doc. 34, ¶ 7). As the Libby project neared the end of the residential cleanup phase, the workload at the Troy facility dropped. (Doc. 34, ¶ 9). During this period, the Troy facility had five full-time equivalent employees, including two associates, a senior consultant, and two technicians. (Doc. 34, ¶ 11). Techlaw met with the EPA in late September 2016 to discuss reducing the staff at the Troy facility and negotiated a reduction of two full-time equivalent positions. (Doc. 34, ¶ 10).

On January 13, 2017, Techlaw discharged Brown, who was 68 years old at the time, and a 53-year-old technician. (Doc. 34, ¶¶ 12, 14). Techlaw retained the Troy facility's senior consultant (aged 62), one of its associates (aged 52), and a technician (aged 30). (Doc. 34, ¶ 12). According to Techlaw, Brown was selected for termination due to a lack of funding and job performance problems. (Doc. 34, ¶ 15, 18-22).

After exhausting his administrative remedies with the Montana Human Rights Bureau and Equal Employment Opportunity Commission (Docs. 2, at 1; 35, at 4), Brown filed this action on May 11, 2018. (Doc. 2). Proceeding pro se, Brown

alleges that Techlaw discharged him based on his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. Techlaw moves for summary judgment on the grounds that (1) Brown cannot establish a prima facie case of age discrimination, and (2) even if he has made a out a prima facie case, he cannot show that Techlaw's articulated legitimate, non-discriminatory reason for his discharge was pretextual.

On August 9, 2019, approximately one month after Techlaw filed its summary judgment motion, Brown filed an Amended Complaint adding a claim under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)-(9) and a claim for libel under Montana law. (Doc. 40). Techlaw has filed a motion to strike the Amended Complaint as untimely and futile under Federal Rules of Civil Procedure 15(a) and 16(b).

## II.     Motion for Summary Judgment

### A.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). Where, as here, the nonmoving party bears the burden of proof at trial, the moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims. *Celotox*, 477 U.S. at 325. *See also Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all

justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro litigants the benefit of any doubt. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

**B.  Analysis**

The ADEA makes it unlawful for an employer to "discharge any individual [who is at least 40 years old] or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 621(a)(1).

At the summary judgment stage, the Ninth Circuit analyzes ADEA claims using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this framework, the employee must first establish a prima facie case of age discrimination." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1021, 1207 (9th Cir. 2008). Once the employee has done so,

5

"the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Diaz*, 521 F.3d at 1207. If the employer satisfies this burden, "the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Diaz*, 521 F.3d at 1207.

To establish a prima facie case of age discrimination under the ADEA, Brown must demonstrate that he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstance otherwise 'giving rise to an inference of age discrimination.'" *Diaz*, 521 F.3d 1207 (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). The fourth element is somewhat flexible, and requires only that the employee "show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).

Techlaw agrees that the first and third elements are satisfied because it is undisputed that Brown was over the age of forty when he was discharged. Focusing instead on the second element, Techlaw argues Brown cannot establish a

prima facie case of age discrimination because he cannot show that he was performing his job in a satisfactory manner at the time of his termination.

For support, Techlaw relies on the affidavit of its contract manager, Mark McDaniel, who was Brown's direct supervisor during the relevant period. (Doc. 34-1, ¶ 3). According to McDaniel, Brown's job performance began to deteriorate during 2016. (Doc. 34-1, ¶ 12). McDaniel states that he had several conversations with Brown during this period to address concerns he had with Brown's job performance and areas that required improvement. (Doc. 34-1, ¶¶ 13-14). McDaniel explains that he spoke with Brown about the fact that he was neglecting his role and responsibilities as the Troy facility's on-site supervisor and health and safety coordinator. (Doc. 34-1, ¶ 14). McDaniel also spoke with Brown about his hostile and disrespectful attitude, his failure to address staff morale, his failure to effectively communicate with staff and management, and his failure to address issues with the quality of laboratory documentation. (Doc. 34-1, ¶ 14).

Techlaw also relies on an affidavit from Nathan Delhierro, who was the lead for Techlaw's asbestos operations. (Doc. 34-2). Delhierro was responsible for supervising operations at the Troy facility and, except for Brown, all employees at the facility reported directly to him. (Doc. 34-2, ¶¶ 4, 6). Delhierro states that Brown had a hostile and disrespectful attitude towards him in his written and verbal communications, and routinely failed to answer his telephone calls. (Doc.

7

34-2, ¶ 10(c)). Delhierro explains that he too had several conversations with Brown to address job performance issues, including Brown's hostile and disrespectful attitude, deteriorating communication with staff and management, failure to attend weekly meetings, failure to complete quarterly health and safety inspections, and failure to address staff complaints. (Doc. 34-2, ¶ 10). When the time came for Techlaw to make staffing changes in January 2017, McDaniel and Delhierro both recommended that Brown be terminated due to his performance issues and inability to work cooperatively with other employees at the Troy facility. (Docs. 34-1, ¶ 16; 34-2, ¶ 15).

Brown responds to this evidence by arguing it is not true that he failed to get along with his coworkers or that he was terminated due to a history of performance problems. (Doc. 41). Statements in an unsworn response brief are not evidence, however, and Brown has not submitted a declaration or affidavit with any specific facts to counter those provided by Techlaw. Other than his own conclusory statements, the only potentially admissible evidence offered by Brown relating to his job performance is a positive performance evaluation from December 2013. (Doc. 41, at 3-4).

This evaluation is not sufficient to create a genuine issue of material fact regarding Brown's job performance at the time of his discharge in January 2017. Techlaw does not dispute that Brown's job performance was satisfactory in

December 2013. As outlined above, however, Techlaw has come forward with evidence that Brown's job performance began to deteriorate in 2016. Because the undisputed facts establish that Brown was not performing his job duties satisfactorily when he was discharged in January 2017, Brown has not established a prima facie case of age discrimination and his ADEA claim fails as a matter of law.

Even assuming Brown could establish a prima facie case, Techlaw argues it is entitled to summary judgment because it has articulated a legitimate, non-discriminatory reason for its adverse employment action and Brown has not come forward with any evidence of pretext. The Court agrees.

Techlaw relies on McDaniel's affidavit, which demonstrates that a slowdown in work at the Troy facility and reduced funding required elimination of two full-time equivalent positions. (Doc. 34-1, ¶¶ 7-10). McDaniel's and Delhierro's affidavits further demonstrate that Techlaw discharged Brown due to this reduction in funding and his deteriorating job performance. (Doc. 34-1, ¶¶ 12-16). Because Techlaw has thus articulated a legitimate, non-discriminatory reason for choosing to discharge Brown, it falls upon Brown to show that Techlaw's articulated reason was a pretext for discrimination.

Pretext may be shown in two ways: "(1) indirectly, by showing that the employer' proffered explanation is unworthy of credence because it is internally

inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of California Davis Bd. of Trustees*, 225 F.3d 115, 1127 (9th Cir. 2000). Brown has not come forward with any admissible evidence from which a reasonable trier of fact could find that Techlaw acted with a discriminatory motive or that its proffered explanation for discharging him is unworthy of credence.

    Brown simply argues the fact that he was, at age 68, the oldest employee at the Troy facility is enough to raise a genuine issue of material fact as to whether Techlaw's proffered reason for discharging him was a pretext for age discrimination. At the time of Brown's discharge, four of the five employees at the Troy facility were members of the class protected by the ADEA because they were more than 40 years old. (Doc. 34, ¶ 12). This means that Techlaw could not have eliminated two positions without discharging at least one member of the protected class. When Techlaw discharged Brown, it also discharged a 53-year old employee and retained its second-oldest employee -- a 62-year-old consultant. (Doc. 34, ¶ 23). Techlaw thus retained one of its two oldest employees. The mere fact that Brown was the oldest, and believes he was discharged because of his age, is insufficient to raise a genuine issue of fact as to pretext.

    As set forth above, Techlaw has submitted unrebutted evidence that it had to eliminate two positions at the Troy facility due to a reduction in funding, and

selected Brown as one of the two employees to be terminated due to his declining job performance. Brown, in turn, has not produced evidence from which a reasonable trier of fact could find that Techlaw's proffered explanation was a pretext for age discrimination. Accordingly, and because Brown has not met his threshold burden of establishing a prima facie case of age discrimination, Techlaw is entitled to summary judgment on Brown's ADEA claim.

## III. Motion to Strike

On August 9, 2019, Brown filed an Amended Complaint adding claims under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)-(9) and for libel under Montana law. (Doc. 40). Techlaw moves to strike the Amended Complaint on the ground that it is untimely and, alternatively, because allowing Brown to add these claims would be futile.

### A. Timeliness

Brown commenced this action in May 2018, and on March 29, 2019, the Court entered a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16. (Doc. 31). The pretrial scheduling order established April 26, 2019, as the deadline for amending pleadings. (Doc. 31, at 1). Techlaw filed its motion for summary judgment on July 1, 2019. (Doc. 33). Approximately one month later, on August 9, 2019, Brown filed his Amended Complaint without seeking leave of court. (Doc. 40).

11

To file an amended pleading after the deadline established in a pretrial scheduling order, a party must obtain leave of court and satisfy the requirements of Rule 16. *Johnson v. v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Under Rule 16(b), a party must show good cause for not having amended the complaint before the deadline specified in the scheduling order. *Coleman. v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 607. Good cause exists if the deadlines in the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609.

Brown filed his Amended Complaint on August 9, 2019 – more than three months after the April 26, 2019 deadline set forth in the pretrial scheduling order. Brown did not seek leave of court before filing his Amended Complaint, and makes no attempt to demonstrate good cause for not having amended his complaint prior to the deadline. Furthermore, the Court notes that discovery has closed and this case is set to go trial on December 16, 2019 – just two months from now. (Doc. 31, at 2). Because Brown filed his Amended Complaint without leave of court and has not demonstrated good cause for amending his pleading to add new claims at this late stage in the proceedings, the Amended Complaint should be stricken from the record.

## B. Futility

Even if Brown could demonstrate good cause, Techlaw argues the Amended Complaint should be stricken because the two claims it attempts to add are futile. Although Rule 15(a) states that leave to amend should be freely given when justice so requires, a court need not grant leave to amend if the proposed amendment would be futile. *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000).

Brown's Amended Complaint includes a claim for violation of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)-(9). Brown alleges he "reported the theft of EPA property by a coworker to his supervisor and was instructed to keep it quiet to avoid an investigation by Federal Marshalls." (Doc. 40, at 2). The remedies provided by the Whistleblower Act are available to employees of the federal government, as defined in 5 U.S.C. § 2105(a). It is undisputed that Brown was employed by Techlaw, which means he was not an employee of the federal government. (Doc. 26, at 2). Because Brown was not a federal employee, he is not entitled to protection under the Whistleblower Protection Act and allowing him to amend his complaint to include such a claim would be futile.

The Amended Complaint also includes a claim for libel, which alleges that "a coworker, signed a written Statement in this matter, accusing the Plaintiff of not

being moral." (Doc. 40, at 2). Techlaw interprets this allegation as referring to a written statement provided to the Investigator for the Montana Human Rights Bureau. (Doc 44). Brown has not filed a response to Techlaw's motion to strike and does not argue otherwise.

To constitute libel under Montana law, the communication at issue must be unprivileged. Mont. Code Ann. § 27-1-802. Privileged communications include those made "in any legislative or judicial proceeding or in any other official proceeding authorized by law." Mont. Code Ann. § 27-1-804(2). The alleged statement by Brown's coworker is privileged because it was made during the Montana Human Rights Bureau's investigation, which is a proceeding authorized under Montana law. See Mont. Code Ann. § 49-2-504. See also *McLeod v. State ex rel. Dept. of Transp.*, 206 P.3d 956, 961 (Mont. 2009). Because Brown's libel claim is based on a privileged communication, allowing him to amend the complaint to include the claim would be futile.

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Techlaw Motion for Summary Judgment (Doc. 33) and Motion to Strike the Amended Complaint (Doc. 43) be GRANTED.

The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 1st day of November, 2019.

*Kathleen L. DeSoto*
Kathleen L. DeSoto
United States Magistrate Judge